OPINION.
{¶ 1} This is an appeal from a post decree order of the domestic relations court construing marital property provisions in its divorce decree.
 {¶ 2} Robert and Patricia Browne were divorced on May 22, 2000. The judgment and decree of divorce incorporated their separation agreement. The decree determined that the value of Patricia's[1] share of Robert's retirement accounts was $131,101, and it further provided:
 {¶ 3} "The parties acknowledge that the Husband intends to designate as beneficiaries of his retirement accounts the parties' two sons. The parties have stipulated that the Husband is unable to withdraw from his retirement accounts the Wife's portion until the year 2002. As a result, the Wife agrees to wait until that time to receive her $131,101 plus any gains or losses on her share. Husband shall have placed in Wife's name the amount of $131,101 through his financial advisor, Chuck Spurgeon. This amount will be kept separate and Wife shall have the money invested into the fund of her choice. The fund will be the separate property of Wife and Wife will benefit from any growth in the fund. In the alternative, Husband shall continue to list as beneficiary the Wife for at least $150,000 which amount includes the principle plus future growth on Wife's portion of the Husband's retirement account. Upon the tendering to the Wife in 2002 of her share plus any growth or loss, Husband shall be free to designate the beneficiary of his choice and remove the Wife as beneficiary.
 {¶ 4} "The Husband shall be entitled to maintain and receive all dividend income from his retirement account until he tenders to the Wife her share in 2002."
 {¶ 5} Patricia attempted to withdraw her share early, but Robert's broker advised that couldn't be done. In late 2001, Patricia asked the court to order a distribution. Before a hearing was held on the motion, the year 2002 had arrived. Patricia's attorney asked Robert's attorney for her share. Robert's attorney first said the share would be $132,875. He then revised that amount to $122,237. The difference appears to be between the value of Patricia's share on January 2, 2002, which was the higher amount, and its value on the date Robert was prepared to pay her share over to Patricia, which was the lower amount.
 {¶ 6} Patricia asked the court to order a distribution of $132,287. The matter came on for hearing. The court thereafter entered a written judgment, stating:
 {¶ 7} "The Final Decree does state a specific amount of One Hundred Thirty-One Thousand One Hundred and One Dollars ($131,101) but it does not designate any particular date in 2002 the funds are to be transferred to the Plaintiff. However, twice in the same paragraph it states `plus any gains or losses.' Reasonable minds can only conclude that the Final Decree took into account current stock markets fluctuations and included the language `any growth or loss' so that any change, either positive or negative, in the investments would be equally shared by both parties. Just as the Plaintiff will share in any gain from the investments, she must also share in losses.
 {¶ 8} "The date of valuation is the date of disbursement. The settlement negotiations are hearsay and not admissible. Both parties have the ability to pay their own fees. Since there is no need for further delay, this is a FINAL APPEALABLE ORDER."
 {¶ 9} Patricia filed a timely notice of appeal. She presents two assignments of error. In both, Patricia argues that the trial court abused its discretion when it ordered Patricia's share valued at the lower date of distribution value instead of its higher value on January 2, 2002.
 {¶ 10} The source of the difficulty here is an imperfect (i.e. incomplete) divorce decree. The court divided the parties' interests in the marital property, as it is required in R.C. 3105.171(B) to do, but it failed to then make a distributive award to each party of his or her share of the divided property, as R.C. 3105.171(E) requires. Instead, the court deferred distribution until the year 2002, without specifying a particular date when the distribution would occur. The court might have avoided these difficulties by ordering a qualified domestic relations order ("QDRO"), which makes a current division of interests in a retirement fund for distribution at a future date certain, but it didn't. The resulting ambiguities required resolution.
 {¶ 11} Patricia argues that she was unable to withdraw the funds she was due on January 2, 2002, when their value was higher, because Robert had failed to put the accounts she was awarded in her name, which the decree required him to do. Robert answers that he couldn't do that because Patricia failed to designate the accounts into which her $131,101 interest was to be "rolled," which was a necessary predicate under the decree to his putting any accounts in her name.
 {¶ 12} Domestic relations courts may not modify property divisions ordered in a prior decree of divorce. R.C. 3105.171(I). Nevertheless, "[i]f there is good faith confusion over the interpretation to be given to a particular clause of a divorce decree, the trial court in enforcing that decree has the power to hear the matter, clarify the confusion, and resolve the dispute." Mattice v. Mattice (Dec. 18, 1998), Montgomery App. No. 17157 (quoting Quisenberry v. Quisenberry (1993),91 Ohio App.3d 341, 348).
 {¶ 13} The trial court's decision in this matter is somewhat tautological. Even so, it is apparent that the court interpreted its decree to result in a valuation of $122,387 for Patricia's share. The ambiguity in its divorce decree required the court to arrive at some resolution. The issue for us is whether the court abused its discretion in the result to which it arrived. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable."Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 14} The parties each present meritorious arguments in support of their respective positions. We must assume that the trial court sorted through them to decide as it did. We may not reverse merely because we may have arrived at a different result. An abuse of discretion must be shown, on the standards set out in Blakemore. On this record, we cannot find that form of defect.
 {¶ 15} The assignments of error are overruled. The judgment of the trial court will be affirmed.
FAIN, P.J. and YOUNG, J., concur.
[1] For convenience and clarity, the parties will be identified by their first names.